222 So.2d 162

**Jack BIDDY**

v.

**Lee M. BIDDY et al.**

**6 Div. 303.**

Supreme Court of Alabama.

April 10, 1969.

Harry B. Cohen, Birmingham, for appellant.

James, Beavers & Harrison, Birmingham, for appellees.

LAWSON, Justice.

This litigation involves a lot and a building thereon located in Tarrant City. The building was used for many years as a cafe. We will sometimes hereinafter refer to the lot and building as the suit property.

We should be confronted on this appeal with these comparatively simple questions:

(1) Did the trial court err in its decree of July 30, 1965, in decreeing that Jack F. Biddy and Oscar T. Biddy each owned an undivided one-half interest in the suit property; and (2) did the trial court err in its decree of November 17, 1965, in overruling objections and exceptions interposed to the Register's amended report filed on October 21, 1965, and in confirming that report?

But we are not so fortunate. The manner in which the litigation was handled in the trial court has resulted in this appeal being submitted on a most confusing record and in errors being assigned which do not go to the real merits of the controversy between the parties.

A summary of the entire bewildering record has been before us in consultation, but in this opinion we will try to present as succinctly as possible only those matters which we think are necessary to an understanding of the opinion and of our holdings.

The suit property was purchased in 1946 by Jack F. Biddy and his brother, Oscar T. Biddy, from P. G. Cowden and wife for the sum of $6,000. Each of the grantees paid one half of the consideration and for several years they understood that each of them owned an undivided one-half interest in the suit property. We will sometimes hereinafter refer to Jack F. Biddy simply as Jack and to Oscar T. Biddy as Oscar.

It appears that the first litigation affecting the suit property was instituted in the Circuit Court of Jefferson County, in Equity, on September 19, 1963, by Lee M. Biddy and wife against Jack. That suit was given Circuit Court number 132–062. Lee M. Biddy, a brother of Jack and Oscar, will sometimes hereinafter be referred to simply as Lee.

In their bill, Lee and his wife alleged that they owned an undivided one-half interest in the suit property; that the other one-half undivided interest therein was owned by Jack; that the suit property could not be equitably divided in kind and they prayed that it be sold for a division of proceeds among the tenants in common, namely, among the complainants and the respondent. The bill filed by Lee and his wife also alleged that a real estate company was holding "in escrow" certain money derived from the rent of the suit property and prayed that such funds be "disbursed in the proper proportion dependent upon the ownership of said land."

The bill filed by Lee and his wife did not allege in what manner they acquired an undivided one-half interest in the suit property. While such an averment is not necessary (Ellis v. Stickney, 253 Ala. 86, 42 So.2d 779), we think it might add to an understanding of this opinion to observe at this point that the evidence shows they claimed such an interest under a deed to them from Oscar bearing date of January 16, 1963, which deed contains the following provision:

"Grantees herein assume and agree to pay all due or to become due by the Grantor herein on above described property; specifically Grantor's share on the mortgage in favor of The First National Bank of Birmingham, Tarrant Branch. (Above-said Bank holds mortgage on entire above described property and Grantor owns undivided one-half interest in and to said property which he is granting by this instrument to Grantees herein.)"

Jack filed an answer on April 27, 1964, wherein he denied that Lee and his wife, the complainants, owned any interest in the suit property and wherein he averred that he was the "sole legal and equitable owner of the entire title in fee simple" to the suit property and that, therefore, there was no reason for a sale for division or for the real estate company to pay over any money collected by it as rent to anyone other than the respondent, Jack Biddy.

His claim of sole ownership of the suit property was based on grounds substantially as follows:

(1) He acquired an undivided one-half interest in the suit property by virtue of the 1946 deed from P. G. Cowden and wife to himself and Oscar. He acquired Oscar's undivided interest in the suit property under a deed executed to him by Oscar in January of 1957, which he failed to have recorded and which Oscar later "purloined" and destroyed or secreted. Lee and his wife had actual notice of the execution and delivery of the aforementioned deed prior to any purported transfer or conveyance by Oscar to them and, consequently, they were not bona fide purchasers for value of any right, title or interest in and to the suit property.

(2) Because of "large sums of money expended by him for taxes, insurance and other expenses in and about the upkeep, maintenance, and overhead" of the suit property, which payments were averred to constitute a resulting trust in Jack's favor.

(3) Because he redeemed the suit property from a tax sale to the State of Alabama.

The answer contained averments to the effect that in October, 1956, Jack orally leased his one-half undivided interest in the suit property to Oscar for the sum of $60 a month and upon the further consideration that Oscar, at his own expense, would repair and remodel the building so that it could be used as a cafe, Oscar having formed a partnership with one Frank Barnett (Baronet) for the purpose of going into the cafe business. Oscar was without funds to make the repairs and to remodel the building and he could not borrow the money needed for such purposes without Jack's assistance, so Jack signed a note and mortgage to the First National Bank of Birmingham, Tarrant City Branch, as a "co-signer" with Oscar for the sum of $4,-000. Later Oscar needed another loan from the same bank in the sum of $1,000 and Oscar executed a new note to the bank in the sum of $5,000, which note Jack "co-signed" as "surety" for Oscar. There was a mortgage executed to the bank on the suit property to secure the payment of the $5,000 note, although it was not so alleged in the answer that Jack signed that mortgage. Oscar and Frank Barnett (Baronet) operated the cafe for approximately three months and Oscar failed to pay Jack the $60 monthly rent which he had agreed to pay. Oscar failed to make any payments on the note which he and Jack executed to the bank; consequently that responsibility fell on Jack, who by February 21, 1963, had paid to the bank as principal and interest approximately the sum of $8,000.

The parts of Jack's answer which we have summarized in the preceding paragraph perhaps shed some light on the averments of Paragraph 11 of the answer which Jack treated as a cross bill. That paragraph reads:

"Respondent claims of the Complainants by way of Cross-Bill the sum of $8,-000.00 due from the Complainants by promissory note and mortgage in the principal amount of $5,000.00 dated, to-wit, the 22nd day of December, 1956,

executed by O. T. [Oscar] Biddy, as principal, and by Respondent Jack Biddy, as surety, and payable with interest to the First National Bank of Birmingham, (Tarrant Branch), which promissory note, secured by said mortgage on the property described in the Complaint, was assumed by Complainants, and which note and mortgage were fully paid by the Respondent Jack Biddy who thereupon became the purchaser of said note and mortgage and subrogated to all of the rights and remedies of said Bank. Respondent further avers that as part of the consideration of said note and mortgage the makers waived their rights to exemption as to personal property and agreed to pay a reasonable attorney's fee, which

Respondent hereby also claims in the sum of, to-wit, $2,000.00."

The answer filed by Jack concludes as follows:

"WHEREFORE, PREMISES CONSIDERED, Respondent humbly prays that this Honorable Court will adjudge and decree that the Respondent Jack Biddy is the sole legal and equitable owner of the real property described in the Complaint and the Complainants have no right, title or interest therein; that Complainants are indebted to the Respondent in the amount of Ten Thousand Dollars ($10,000.00) on the aforementioned promissory note and mortgage assumed by the Complainants; and that this Honorable Court will require the Complainants to pay to the Respondent a reasonable fee for the services of his Solicitor who represents him in this cause; and Respondent prays for such other, further, and special relief as to which this Honorable Court may deem that he is entitled, in equity and good conscience."

 The record indicates that the complainants, Lee Biddy and his wife, filed some kind of responsive pleading to Jack's answer which was captioned "Answer of Respondent." That responsive

pleading is referred to in a note of testimony later filed on behalf of Lee Biddy and wife as the "Answer to 'Answer of Respondent.'" An answer to an answer in equity is not proper. Matter in rebuttal to an answer filed in an equity case must be presented by amendment to the bill.—Equity Rule 27. But, of course, an answer to a cross bill is proper.

We are not confronted, however, with determining the nature or character of the pleading filed by the complainants to the "Answer of Respondent" because no such instrument is in this record.

On May 10, 1965, Case No. 132–062 came on for a hearing before Judge Barber and a jury. The respondent, Jack Biddy, upon the filing of his answer, demanded "a jury for the trial of the issue of title and of all other issues triable by a jury." The request for a jury trial was in keeping with our holding in Kirkley v. Green, 273 Ala. 602, 604, 143 So.2d 454, where we said: "We have held that by virtue of Title 7, §§ 322–326, parties to a partition proceeding as a matter of right are entitled to a jury trial. Owens v. Washington, 260 Ala. 198, 69 So.2d 694."

Lee Biddy was the only witness who testified on behalf of the complainants on May 10, 1965. Four witnesses testified on that day for the respondent, including the respondent himself, Jack Biddy. It is clear from the record that the examination of Jack Biddy was not concluded on May 10, 1965. He was called from the stand in order to permit other witnesses to testify. When Delbert Smith, a witness for the respondent, left the stand on May 10, 1965, the trial judge advised the jury in part as follows: "Now that is the last witness today, gentlemen. We interrupted the testimony of Mr. Jack Biddy in order to allow these witnesses to testify out of turn. Now Mr. Jack Biddy will take the stand the first thing in the morning. * * *"

We cannot determine from the record whether Jack Biddy did, in fact, "take the stand the first thing in the morning" because none of the testimony given by any witness except the testimony given by the witnesses called on May 10, 1965, appears in this record. Yet, a note of testimony filed in open court on May 11, 1965, shows that the cause was submitted on the testimony of witnesses for both sides who had not testified on May 10, 1965. The note of testimony shows, among other things, that the cause was submitted on behalf of the respondent, Jack Biddy, on the testimony of Oscar F. Biddy, along with the testimony of other witnesses whose testimony, as we have previously indicated, is not in this record since they were not examined on May 10, 1965.

The record indicates that at the conclusion of the evidence (apparently on May 11, 1965), the trial judge submitted to the jury six questions to which the jury returned special verdicts. See Little v. Sugg, 243 Ala. 196, 213, 8 So.2d 866. The record is silent as to whether those questions were submitted at the request of one or more of the parties or were submitted by the trial judge of his own volition.

We will not quote the questions and the answers thereto, but will summarize the special verdicts as follows:

1. That there was not "a conveyance duly executed by O. T. [Oscar] Biddy in the proper legal form, duly notarized and delivered to Jack Biddy without restriction or limitation."

2. That Jack Biddy was not "a bona fide purchaser for value of a one-half undivided interest in and to the suit property." We assume that the verdict referred to the purported deed from Oscar to Jack because there was no claim made that Jack was not a bona fide purchaser for value of a one-half undivided interest in the suit property by virtue of the deed from P. G. Cowden and wife.

3. That there was "a conveyance executed, notarized and delivered from O. T. [Oscar] Biddy to the complainants, Lee Biddy and wife"; that at the time of the

execution and delivery of that conveyance Lee Biddy and his wife were not aware of any previous conveyance from Oscar to Jack; that upon exercise of reasonable care Lee Biddy and wife would not have known "of such prior deed, if any." Yet, the jury found that Lee Biddy and his wife were not "bona fide purchasers for value from O. T. [Oscar] Biddy of a one-half undivided interest in and to the property, the subject matter of this suit."

The record contains a minute entry dated May 11, 1965, reciting that "this cause is submitted for final decree upon pleadings and proof as noted."

If the trial court had thereupon rendered a final decree based on the special findings of the jury, the complainants, Lee Biddy and wife, would not have been entitled to any of the relief prayed for in their bill and a decree to that effect would have disposed of Case No. 132–062.

But the trial court did not render a final decree prior to May 26, 1965, on which date Oscar Biddy, by and through Mr. Beavers, who had represented Lee Biddy and wife, filed a motion for Oscar to be permitted to intervene in Case No. 132–062, alleging:

> "Your Petitioner, Oscar T. Biddy, is the owner of the legal title in and to a ½ interest in the real estate described and set forth in Paragraph Two of the Bill of Complaint and that the deeds heretofore given conveying an interest therein to Lee M. Biddy and an interest therein to Jack Biddy are both null, void and unaffected to convey any of Petitioner's title and Petitioner is not represented by any party in said action and unless this Honorable Court permits Petitioner to intervene in this cause and asserts his rights therein, that he stands to lose or have his title to said property left in suspense and unprotected.

> "Petitioner further shows to the Court that the record title held by the said Lee M. Biddy and wife, Ethelwyn F. Biddy is held by the said parties as Trustees for

Petitioner and gives rise legally to either a resulting trust or a constructive trust which Petitioner prays this Honorable Court to establish for his benefit."

Taking the averments just quoted above as being true, they seem to at least imply that Oscar is admitting that he did in fact execute deeds to Lee M. Biddy and wife and to Jack Biddy, as each of them claimed in their pleadings filed in Case No. 132–062.

The record does not show that Mr. Cohen, counsel for Jack Biddy, filed any written objections or other type of pleading opposing Oscar's motion to be permitted to intervene in Case No. 132–062, nor does the record show that Mr. Cohen orally interposed any form of objection to Oscar's motion to intervene.

On June 4, 1965, prior to any final decree having been rendered in Case No. 132–062, Jack Biddy through his counsel, Mr. Cohen, filed a suit in the Circuit Court of Jefferson County, in Equity, against his brother Oscar, which was given case number 138–993. Aside from the prayer for process, the prayer of the bill filed by Jack against Oscar (in Case No. 138–993) reads:

> "* * * Complainant further prays that this Honorable Court will grant a hearing in this cause and will make and enter a Final Decree quieting the title to the real property described in this Complaint, and will adjudge and decree that the Complainant is the sole owner of said real property and has a right to rent, sell, mortgage, or otherwise dispose of said property without any accounting to the Respondent. Complainant further prays that this Honorable Court will adjudge and decree that the Respondent, Oscar T. Biddy, is indebted to the Complainant, Jack F. Biddy, in the aggregate sum of $8,500.00 or more on the Promissory Note and Mortgage in the principal sum of $5,000.00, which said Respondent made to the First National Bank of Birmingham, (Tarrant Branch) and which the Complainant, as surety for

the Respondent, paid in full, and further that this Court will order and adjudge that the Complainant shall have and recover from the Respondent the sum of $8,500.00 or more with waiver of exemption as to personal property. Complainant further prays that in the event that this Honorable Court shall deem that the Respondent still has some right, title or interest in the real property described in this Complaint, this Court shall then order a Reference to make an accounting or will make such accounting itself between Complainant and Respondent in order to determine the relative right, title, and interest of each of the parties in and to said property; that in the event such accounting shows that the Respondent would not be entitled to any share of the proceeds of the sale of such property, then Complainant prays that this Honorable Court will require the Respondent to execute a proper Deed of conveyance to the Complainant for whatever right, title, and interest this Court shall find that the Respondent may still own in said property. Complainant further prays that in the event that an accounting between the parties shall disclose that the Respondent is still entitled to a certain share of the proceeds of sale of said property, then this Court shall order said property sold, at public or private sale, and the net proceeds of said sale to be divided between the parties in accordance with the respective equity of each party as determined by this Court. Complainant also hereby prays for the allowance of a reasonable fee for his Solicitor who represents him in this cause. And Complainant prays for such other, further, and special relief as to which this Court may deem that he is entitled, in equity and good conscience."

We will not undertake to delineate the averments set out in Jack's bill against Oscar in Case No. 138–993. In some respects the averments of that bill are similar to those set forth in Jack's answer filed in Case No. 132–062, but in other material respects they are different.

On June 23, 1965, Oscar Biddy, by and through his counsel, Mr. Beavers, filed a special plea wherein he averred:

"1. That there is now pending in this Honorable Court under Case No. 132–062 a suit wherein the Complainant herein is a Respondent and the Respondent herein is a Petitioner in a motion for intervention, which said Case No. 132–062 can resolve all of the issues raised by the Bill of Complaint herein filed by said Jack F. Biddy."

That plea concluded with what amounts to a prayer that the court dismiss the bill of complaint filed by Jack Biddy in Case No. 138–993.

The trial court on June 23, 1965, rendered the following "Order on Motion to Intervene and of Consolidation":

"This matter coming on to be heard on motion of Oscar T. Biddy requesting permission to intervene in this cause, said motion was argued and submitted.

"At this hearing, it being discussed and determined by the counsel of record for the parties in this instant case and parties of record in Case No. 138–993, styled Jack F. Biddy vs. Oscar T. Biddy also known as O. T. Biddy, all of whom were present or represented by counsel in Court at this hearing, that the issues involved in this instant case and the said case in this Court numbered 138–993 as above described could and should be more expeditiously and more properly determined, without doing violence to or derogating from the rights of any of the above named parties, by a consolidation of said cases and an adjudication of rights of all parties in one proceeding, and all parties consenting thereto; it is, therefore, CONSIDERED, ORDERED, ADJUDGED and DECREED as follows:

"ONE: That the Motion of Intervenor, Oscar T. Biddy, in this instant case, to be allowed to intervene in this instant case, be and it is hereby granted and Intervenor is permitted and instructed

forthwith to file a Petition of Intervention and concurrently therewith to answer the Bill of Complaint as filed in Case No. 138–993 in this Court so as to place at issue the matters alleged in said bill, at a time prior to the date of setting hereinafter mentioned.

"TWO: This instant case and Case No. 138–993 in this Court styled Jack F. Biddy vs. Oscar T. Biddy also known as O. T. Biddy are consolidated, by consent of all parties in both cases and their counsel of record, and all issues, by consent, existing in both of said cases, and the rights of all parties involved in both of said cases may and shall, by consent, be determined by this Court in one proceeding and by one final decree.

"THREE: A copy of this decree shall be filed of record and become incorporated into and become a part of the record and proceedings in Case No. 138–993 styled Jack F. Biddy vs. Oscar T. Biddy also known as O. T. Biddy.

"FOUR: These consolidated cases are set for oral hearing at 9:00 A.M. on Tuesday, July 27, 1965."

The record does not indicate any action taken by Mr. Cohen, as counsel for Jack Biddy, in opposition to any of the provisions of the "Order on Motion to Intervene and of Consolidation."

On July 1, 1965, in compliance with the Court's order of June 23, 1965, which we have quoted above, Oscar filed his answer in Case No. 138–993, that is, in the suit brought against him by his brother, Jack Biddy. Oscar's answer is devoted primarily to a denial of the averments of the said bill of complaint. We will not set out all of the averments of the answer, but will summarize a few of them.

Oscar denied that he ever executed and delivered a deed to his brother, Jack F. Biddy, the complainant in that case. This position is contrary to the averments of Oscar's motion or petition for intervention filed on May 26, 1965.

Oscar admitted that Jack redeemed the suit property from a tax sale, but he denied the legal implication that the redemption vested title in Jack to the exclusion of Oscar, a "joint owner." He admitted that he had executed a deed conveying an undivided one-half interest in and to the suit property to his brother, Lee Biddy, and the latter's wife, but averred that said deed was executed for "protection purposes," which he deemed necessary because Jack, despite repeated demands by Oscar for an accounting of the rents collected from the suit property, would never account to Oscar. He offered to do equity and asked for an accounting of all rents and income to which he was entitled and which were derived from the suit property.

Thereafter, on July 6, 1965, Oscar, following the permission granted him by the trial court, filed his petition of intervention, which in pertinent parts reads:

"3. That this Honorable Court has joined in this proceeding a suit filed by Jack F. Biddy vs. your Intervenor as set forth in Case No. 138–993 in this Honorable Court. That in said Case No. 138–993, your Petitioner filed an answer which he herewith incorporates and adopts in this Petition.

"Your Petitioner prays that this Honorable Court will upon a hearing in this cause order and direct the sale of the property involved and will adjust the equities between the parties, requiring an accounting for all rents collected by Jack Biddy from said property.

"Your Petitioner offers to do equity."

The record contains a minute entry which reads as follows: "On July 30, 1965, this cause is submitted for final decree upon pleadings and proofs as noted."

On July 30, 1965, the trial court rendered the following decree:

"This cause coming on to be heard was submitted for Decree together with Case #138–993 entitled Jack F. Biddy vs. Oscar T. Biddy which has heretofore been con-

solidated by agreement of parties and by order of this court duly entered in said cause, and the court, considering said causes and the evidence as heretofore given to the court, together with a verdict of a jury which was duly impaneled and tried the issues in Case #132–062; after due consideration of the issues involved, is of the opinion that a reference should be held in said cause to determine just what rents have been collected by the said Jack F. Biddy and what part thereof has been spent, and for a general accounting thereof, and the court is further of the opinion that Jack F. Biddy and Oscar T. Biddy, are the owners of an undivided one-half interest each, as tenants in common, in and to the real estate described in the Bill of Complaint and being the subject matter of this suit and that said property is so situated both in size and value as to make an equitable division in kind thereof between the two tenants in common impossible and that it is necessary that said property be sold in order that an equitable division can be made; Now Therefore,

"It is ORDERED, ADJUDGED and DECREED by the Court as follows:

"1. That the Register of this Court is hereby directed and ordered to hold a reference on the 30th day of August, 1965, to determine the amount of rents collected on the premises involved in this litigation and where same were spent if any were collected, and what mortgage payments, taxes, insurance and other legal charges have been paid for the maintenance and protection of the hereinafter described real estate and by which parties said expenditures have been made.

"2. That Jack F. Biddy and Oscar T. Biddy each own an undivided one-half interest in and to the following real estate situated in Jefferson County, Alabama and constituting the subject matter of this litigation:

" 'Lot 18 in Block 7, according to the Survey of Tarrant City by the Tarrant Land Company, an amended Map of

which is recorded in the Probate Office of Jefferson County, Alabama, in Map Book 10, Page 107, said lot fronting 25 feet on the Southwest line of Pinson Street and running back Southwesterly of that uniform width 148.1 feet to an alley,'

And that said property is so situated in value and kind that it is necessary that said property be sold in order that an equitable division may be made.

"3. That the Register of this court is hereby ordered and directed to sell the above described property at public outcry for cash during the legal hours of sale in front of the Jefferson County Courthouse, 21st Street entrance for cash; after giving thirty (30) days due notice thereof by publication once a week for three consecutive weeks in The Birmingham Messenger, a newspaper of general circulation in Jefferson County, Alabama.

"4. That jurisdiction in these causes is hereby retained by this court for the purpose of determining attorneys fees, claims and off sets of any party hereto and such other matters of equity as may be necessary to finally determine the issues in these causes."

By an order of the Register under date of July 30, 1965, the sale of the suit property was set for September 10, 1965. By an order of the trial judge under date of September 10, 1965, the sale of the suit property was postponed until October 15, 1965, no reference having been had due to the illness of Mr. Cohen, counsel for Jack Biddy. The court's order of September 10, 1965, contained the following provisions:

"2. That the Reference in this cause be held as soon as possible compatible with the schedule and ability of the parties and counsel to attend same, and

"3. That said Reference shall include an accounting between the parties and a determination of their respective rights and interests in and to the property in question, and that in no event shall said sale of property be held until after said

Reference and the approval by this Court of the Referee's findings and conclusions."

A reference was held by the Register on September 22, 1965, and he filed his report with the court on October 12, 1965. On the following day, October 13, 1965, Jack Biddy, through his counsel, filed objections and exceptions to the Register's report. On October 14, 1965, the trial court rendered an order wherein he found that some of the objections and exceptions interposed by Jack Biddy to the Register's report were well taken and further held that it would be improper for a sale of the suit property to be held on October 15, 1965, as previously scheduled. In his order of October 14, 1965, the trial court provided that the Register hold another reference for a full accounting between the parties and continued the sale of the suit property until a date after the Register had made his final report to the court and it had been confirmed by the court. Also in the order of October 14, 1965, the trial court provided as follows: "The attorney's fee as claimed by the said Jack Biddy in Paragraph 7 of said Objections and Exceptions to Report of Register is hereby denied in its entirety." Thereafter the sale of the suit property was continued by the Register until October 22, 1965.

On October 21, 1965, the Register filed his "Amended Report." It appears in said amended report that the Register conferred with counsel for the parties on October 19, 1965, but that no request for additional testimony was made and none was taken at that time. So the amended report of the Register was based on the testimony taken on September 22, 1965, and, perhaps, on the conferences which he had with the attorneys on October 19, 1965.

On October 25, 1965, Jack Biddy filed his objections and exceptions to the amended report of the Register.

On November 17, 1965, Jack Biddy filed "Petition to Set Case Down for Trial on Merits and to Stay Sale of Property Pending Trial." On the same day the trial court rendered the following decree:

"This matter coming on to be heard on 'Petition to Set Case Down For Trial on Merits and to Stay Sale of Property Pending Trial', as filed by Respondent, Jack Biddy, and upon 'Objections and Exceptions to Amended Report of Register' as filed by the said Jack Biddy, Respondent, and arguments on both pleadings by counsel of record being heard and considered by the Court, and the Court being of the opinion that as to the said 'Petition to Set Case Down For Trial on Merits and to Stay Sale of Property Pending Trial', same is not well taken and should be disallowed and refused; and as to 'Objections and Exceptions to Amended Report of Register', the Court is of the opinion that same should be disallowed and refused. It is, therefore, ORDERED, ADJUDGED and DECREED as follows:

"ONE: That the Petition of Jack F. Biddy to set case down for trial on merits and to stay sale of property pending trial is hereby disallowed, denied and refused.

"TWO: That the Objections and Exceptions to the Amended Report of the Register as filed by the Register on October 21, 1965, in this cause are hereby overruled and denied.

"THREE: That the 'Amended Report of the Register' as filed in this cause on October 21, 1965, is hereby, in all things, confirmed.

"FOUR: That the Register is hereby instructed to order the sale of the real property involved in this suit, at the time and in the manner prescribed by law, and to apply the proceeds of said sale in keeping with the Decree of this Court dated July 30, 1965, wherein the interests of interested parties was checked and determined by the Court. Distribution is to be made to said interested parties after all the costs of this cause and the allied and conjoined Cause No. 138–993 in this Court and styled Jack F. Biddy

vs. Oscar T. Biddy o/k/a O. T. Biddy, have been deducted and paid to the Register.

"FIVE: In keeping with the Decree of this Court dated July 30, 1965, and particularly Paragraph 4 thereof, the jurisdiction of this cause and of said allied Cause No. 138–993 in this Court is hereby retained by the Court for the determination of such other matters of equity, if any there be, as may be necessary for the final determination of the issues in these causes."

Thereafter the Register set Wednesday, January 26, 1966, as the day for the sale of the suit property.

Before that day arrived and on January 19, 1966, Jack Biddy appealed "from the Decrees rendered in the above entitled Cause on the 30th day of July and on the 17th day of November, 1965." On the same day he also filed a supersedeas bond in an amount fixed and established by the trial court. Citation of appeal was duly served on Mr. Beavers, counsel for the adversary parties, on January 26, 1966, and the certificate of appeal was filed in this court on the following day.

On June 9, 1966, after the appeal had been perfected to this court and after both the trial court and this court had granted to the appellant, Jack Biddy, extensions of time within which to file the transcript of the record in this court, the said Jack Biddy filed in the trial court a "Petition to Correct Erroneous Entry in Record." In essence, Jack Biddy in the last-mentioned petition complained of the order of June 23, 1965, in so far as it shows that "all parties and their solicitors of record" agreed to the order allowing Oscar Biddy to intervene in Case No. 132–062 and to consolidate that case with Case No. 138–993, in that Jack Biddy's "Solicitor of Record, Harry B. Cohen, vigorously opposed the Motion to Intervene and vigorously objected to the granting of said Motion and to the consolidation of said causes." Attached to the last-mentioned petition was a letter purportedly written to the trial judge by Mr. Cohen on behalf of Jack Biddy. The said letter contains statements to the effect that the writer of the letter excepted to "the intervention" and that the court's "Order on Motion to Intervene and of Consolidation" fails to show that such an exception was taken.

The trial court on June 13, 1966, after hearing "statements of counsel and arguments" overruled and denied Jack Biddy's "Petition to Correct Erroneous Entry in Record."

We will dispose first of appellant's Assignment of Error 32, which reads: "The Trial Court erred in making and entering its Order of June 13, 1966 (Tr. 193) denying Appellant's Petition to Correct Record (Tr. 192)." This assignment, under our cases, is clearly without merit. The order of June 13, 1966, resulted from the "Petition to Correct Erroneous Entry in Record" filed by appellant's counsel on July 9, 1966, after the appeal had been perfected to this court. As we have shown above, the Certificate of Appeal was filed here on January 27, 1966. We have held, that a trial court cannot pass upon any matter involved on the appeal.—Kinney v. White, 215 Ala. 247, 110 So. 394. But it may proceed in matters entirely collateral to that part of a case which is appealed.— Barran v. Roden, 263 Ala. 305, 82 So.2d 398; City of Birmingham v. Bouldin, 280 Ala. 85, 190 So.2d 279. We are not here concerned with the effort of appellant to have the court enter an order in a matter collateral to the appeal, but an effort to have the court change or amend an order or decree directly involved in a matter involved on the appeal.

There are several assignments of error which take the point that the trial court erred to a reversal in permitting Oscar Biddy to intervene in Case No. 132–062, the proceeding which Lee M. Biddy instituted against Jack Biddy. These assignments of error are without merit. Only rulings of the trial court are subject to

assignments of error.—Central of Georgia Ry. Co. v. McDaniel, 262 Ala. 227, 78 So.2d 290; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Mulkin v. McDonough Construction Co. of Georgia, 266 Ala. 281, 95 So.2d 921. As we have heretofore observed, no ruling of the trial court was timely invoked to the petition filed by Oscar Biddy for permission to intervene in Case No. 132–062.

Appellant argues assignments of error to the effect that the trial court erred to a reversal in consolidating Cases Nos. 132–062 and 138–993. Such assignments of error are without merit. Section 221, Title 7, Code 1940, as amended by Act No. 230, approved September 15, 1961, Acts 1961, Vol. II, p. 2241, authorizes circuit courts in counties of 500,000 or more population to consolidate pending cases of like nature. The trial court's order rendered on June 23, 1965, which we have quoted above, shows that the consolidation of the two cases was "by consent of all parties in both cases and their counsel of record." The appellant did not in any way take exception to the language of the trial court quoted above. The record showing that the appellant and his counsel having consented to the consolidation, we are at a loss to understand how counsel for appellant can insist in this court that the order of consolidation should work a reversal.

In support of his Assignments of Error 11, 12, 13, 14, 24, 25, and 26, the appellant says in his brief in part as follows:

"Appellant respectfully submits that the Trial Court committed reversible error in rendering its decree of July 30, 1965, for the reasons that there has never been a trial on the issues between Jack Biddy and Oscar Biddy with respect to the title and ownership of the property in question as between said parties; the decree is based upon a submission and pleadings and proof in the original case (# 132–062) between Lee Biddy and Jack Biddy, prior to the intervention of Oscar Biddy and prior to the filing of the second

suit by Jack Biddy against Oscar Biddy (#138–992); and there is no evidence to support such decree with respect to the rights of Jack Biddy and Oscar Biddy inter se; and there is no note of testimony or note of submission to support said decree with respect to the rights of Jack Biddy and Oscar Biddy inter se."

We have quoted the trial court's "Order on Motion to Intervene and of Consolidation" rendered and entered on June 23, 1965, but we will set out here the last paragraph of that order: "FOUR: These consolidated cases are set for oral hearing at 9:00 A.M. on Tuesday, July 27, 1965."

We think the language just quoted called for a hearing wherein the parties would be afforded an opportunity to adduce proof and to argue in person or by counsel the inferences flowing from the evidence. We do not think this conclusion runs counter to the effect of any statement made in the following cases.—D. B. Clayton & Associates v. McNaughton, 279 Ala. 159, 182 So.2d 890; WGOK, Inc., v. WMOZ, Inc., 275 Ala. 264, 154 So.2d 22; Fiorella v. State, 40 Ala.App. 587, 121 So.2d 875.

The record fails to disclose that there was a hearing of any kind on July 27, 1965. In appellant's brief it is said, in affect, that there was no hearing on that date and appellees in their brief do not contend that there was such a hearing.

Following the court's order of June 23, 1965, is a Minute Entry to which we have already referred: "On July 30, 1965, this cause is submitted for final decree upon pleadings and proof as noted."

There was no note of testimony or note of submission filed in so far as this record discloses except that filed on May 11, 1965, in Case No. 132–062, filed by Lee M. Biddy and wife against Jack Biddy. The trial court apparently relied upon the evidence in that case in rendering its decree of July 30, 1965, wherein it was decreed that Jack F. Biddy and Oscar T. Biddy each owns an undivided one-half interest in the suit

property and the special findings of the jury in that case might be said to be to that effect. We take note of the fact that the pleadings in Case No. 132–062 and Case No. 138–993 were not the same.

But we do not think the language of the court's order of June 23, 1965, can be said to show that Jack Biddy consented that his interest in the suit property be determined by the evidence adduced and noted in Case No. 132–062 or by the special findings of the jury in that case.

We cannot see how the appellant can be said to be bound by the doctrine of res judicata or the principle of estoppel by judgment. There was no decree rendered in Case No. 132–062 prior to the order of intervention and consolidation. In § 697 of 50 C.J.S. Judgments p. 153, it is said in part:

"As stated generally supra § 686, the force of the estoppel is in the judgment itself, and it is not the finding of the court or the verdict of the jury, but rather the judgment entered thereon, which concludes the parties * * *"

In Crausby v. Crausby, 164 Ala. 471, 476, 51 So. 529, we said:

"* * * But to support a plea of res judicata, as was said by Stone, J., in Gilbreath v. Jones, 66 Ala. 129, 132: 'The parties must be the same, and the subject-matter the same, the point must be directly in question, and the judgment must be rendered upon that point. * *"

We recognize the fact that appellant participated in two hearings before the Register before complaining of that part of the decree of July 30, 1965, decreeing that he and Oscar each owned an undivided one-half interest in the suit property. But we are unwilling to say that that circumstance is sufficient to show that he had consented that his interest in the suit property be decreed in · accordance with the evidence adduced and noted in Case No.

132–062 or by the special findings of the jury in that case.

We entertain the view that the trial court erred in its decree of July 30, 1965, in so far as it decreed therein that Oscar and Jack each owned an undivided one-half interest in the suit property, in that no evidence was taken in Case No. 138–993. This conclusion requires a reversal not only of the decree of July 30, 1965, but of the decree of November 17, 1965, confirming the report of the Register, because the matter before the Register was based on the provisions of the decree of July 30, 1965, which we have concluded were erroneous.

There is no merit in appellees' motion to dismiss the appeal or affirm the judgments appealed from because the record does not contain all of the evidence adduced in Case No. 132–062. As we have previously pointed out, no decree was rendered in Case No. 132–062 and if all of the evidence adduced on that trial was in the record before us it would not affect our conclusion.

Nor is there any merit in appellees' contention that the decree of November 17, 1965, is not such a final decree as will support an appeal because of the provisions of Section Five of that decree, which section reads:

"In keeping with the Decree of this Court dated July 30, 1965, and particularly Paragraph 4 thereof, the jurisdiction of this cause and of said allied Cause No. 138–993 in this Court is hereby retained by the Court for the determination of such other matters of equity, if any there be, as may be necessary for the final determination of the issues in these causes."

We have been advised that Oscar Biddy has died since the appeal was submitted in this cause. Since his death occurred after submission here, there is no occasion "to revive this action and cause of action in the name of Lee M. Biddy,

the administrator ad colligendum," as suggested by counsel for Oscar Biddy.

The judgments appealed from are reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.