247 So.2d 118

Charles M. PERKINS and O. T. Perkins, doing business under the firm name of Charles M. and O. T. Perkins Masonry Company

v.

REYNOLDS CONSTRUCTION CO., Inc. and Standard Accident Insurance Company.

6 Div. 66, 67.

Court of Civil Appeals of Alabama.

April 14, 1971.

Davis & Baird, Tuscaloosa, for appellants.

Hubbard & Waldrop and James J. Jenkins, Tuscaloosa, for appellees.

BRADLEY, Judge.

On October 21, 1963 appellee, Reynolds Construction Company (hereinafter referred to as Reynolds) filed complaint in case number 18572 against the appellants, Charles M. and O. T. Perkins (hereinafter referred to as Perkins), in the Circuit Court of Tuscaloosa County, Alabama. The complaint claimed $7,500.00 due Reynolds and was based on the common count for money had and received.

Thereafter, on March 14, 1964, Perkins filed a complaint in case number 19020 in the same court against Reynolds. This complaint claimed $9,165.81 due by contract between Perkins and Reynolds for brick and block work done by Perkins for Reynolds under and by virtue of said contract.

Thereafter, demurrers were filed in both cases. Later an order was entered allowing the parties to plead in short by consent.

Cases numbered 18572 and 19020 were consolidated, and trial was had before the court and jury. There was a verdict in case 18572 in favor of Reynolds for $2,396.00.

Thereafter, the court entered judgments in both cases, in accordance with the verdict.

Motion for new trial was filed and overruled; thereupon Perkins filed notice of appeal to this court.

On January 10, 1962 Perkins and Reynolds entered into a sub-contract wherein Perkins agreed to furnish all labor and materials for the brick and block work on low-rent housing projects number 152-1 and 152-2, located in Northport, Tuscaloosa County, Alabama. The consideration for said contract was $58.00 per thousand for brick, 15¢ per block for all foundations, 18¢ per block for block above the floor, $794 for stonework in window sills, and $720 for cleaning and polishing the bricks.

The contract between Reynolds and Perkins provided that if any of the terms or conditions of the contract were breached by Perkins, then Reynolds would have the right to terminate the contract by giving seven days' written notice, and would also be able to back charge Perkins under said contract.

Reynolds' claim, for which suit was filed in case number 18572, arises out of a claimed back charge for masonry work and clean up, and a further claim that Perkins was paid in excess of their contract, as controlled by the number of brick laid.

Perkins' claim, for which suit was filed in the second case, number 19020, arose as a result of Perkins' claim that Reynolds breached its contract in that Reynolds did not pay Perkins all the sums due pursuant to their contract.

The evidence introduced on behalf of Reynolds showed that approximately 747,590 bricks and 134,826 blocks had been laid on the two projects. The amount of bricks and block laid did not include bricks and block in the foundation of the buildings.

For the laying of the bricks and blocks, it was stated that Perkins had been paid $71,015.00, which was $2,395.45 more than they should have been paid. Furthermore, Reynolds claimed that they were due a back charge of $6,366.70 for masonry work and clean up, because they had used some of their workers to do Perkins' job because the entire project was behind schedule. Also, according to Reynolds, this work was done by mutual agreement with Perkins.

The general superintendent on the job for Reynolds testified that Perkins was supposed to receive pay only for bricks and blocks actually laid on the job. But, he stated, there was waste of the bricks and blocks far in excess of what was normal on such projects. He also stated that it was necessary to place additional masons on the job to do some of Perkins' work.

Other witnesses confirmed that Reynolds placed masons on the job to assist Perkins, and Perkins did not object to this arrangement. These witnesses also testified to the waste and possible theft of materials.

There was testimony from two suppliers of brick that they had delivered 867,000 bricks to the jobsite.

Testimony on behalf of Perkins was to the effect that Perkins had never agreed to Reynolds' putting masons on the job to help speed up the project, and when it was discovered there were masons on the job supplied by Reynolds, they were run off.

It was also stated on behalf of Perkins that they laid 859,000 bricks and 167,150 blocks, and were due for their work $81,475.20. They were paid $71,015.00, leaving a balance due of $9,936.79.

Mr. Charles Perkins testified that Reynolds' masons did some work on several buildings at a cost of $2,430.00. Perkins did not, however, ever allow Reynolds a credit for this amount.

Mr. Reynolds testified that he paid these extra masons $4,849.25 for the work that should have been done by Perkins.

Perkins sets out fifteen assignments of error in the transcript. Perkins, however, fails to argue assignments one, four, five, six, fourteen and fifteen, thereby waiving them. Supreme Court Rule 9.

Assignment of error two is predicated upon the giving of Reynolds' written requested charge number 2. The charge in essence states:

"If you are reasonably satisfied * * * that Reynolds has paid Perkins an amount in excess of that to which they were entitled under the agreement involved in this case, then you cannot return a verdict * * * in favor of Defendants, Perkins."

Perkins asserts that charge number 2 misleads, in that it tends to instruct the jury to disregard Perkins' claim, and further, that it completely ignores that two separate cases were being tried, in one of which Perkins claimed a sum due from Reynolds.

Reynolds, on the other hand, says that in light of the court's oral charge and explanation of the issues, it is absurd to contend that the charge in question misled the jury into thinking that there was only one issue to be decided.

■ As a general rule the authorities in Alabama are committed to the holding that an error in a given written charge is not cured or rendered harmless by a correct statement of the law in the oral charge. Smith v. State, 15 Ala.App. 662, 74 So. 755; Atlantic Coast Line R. Co. v. Horn, 37 Ala.App. 220, 66 So.2d 202.

While recognizing the above rule, however, the Alabama Supreme Court in Western Union Telegraph Co. v. Gorman, 237 Ala. 146, 185 So. 743, stated:

"Taken on its face and alone the charge does not state a correct principle * * *. It is a solecism. Defendant cannot be both simply negligent and wanton at one and the same time by vir-

tue of the same act \* \* \*. But while an erroneous charge given in writing is not neutralized by a correct charge, it should be interpreted in the light of the incidents of the trial, *including the court's oral charge*, to determine if there was prejudice in giving the charge." (Emphasis added.)

Furthermore, the law in Alabama regarding misleading charges appears to be settled. The court in United Insurance Company of America v. Ray, 275 Ala. 411, 155 So.2d 514, in an action on an insurance policy by the insured against the insurer stated:

"The giving of a charge containing a correct proposition of law, though it may be misleading, as applied to the facts in the case, is not reversible error, the remedy being for the opposite party to request an explanatory charge. Forst v. Leonard, 116 Ala. 82, 22 So. 481; Roan v. Smith, 272 Ala. 538, 133 So.2d 224; Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306."

In addition the Alabama Supreme Court in Russell v. Thomas, 278 Ala. 400, 178 So.2d 556, in discussing the problem in the instant case stated:

"We held in McCaa v. Thomas, 207 Ala. 211, 92 So. 414, that charges which necessarily mislead a jury, rather than have a tendency to mislead, are erroneous and not to be cured by an explanatory charge."

The issue therefore before this court under this assignment is the prejudicial effect, if any, of charge number 2. The record clearly indicates that the two cases involved herein (cases 18572 and 19020) were consolidated for trial by agreement of the parties after a hearing in open court. Further, a reading of the court's oral charge shows that the court not only explained that there were two separate suits involved, and that each party is a complaining party-plaintiff in his own suit, but also, the court instructed the jury as to a choice of three possible verdicts, one of which would have found the issues in favor of Perkins and against Reynolds, and would have assessed damages against Reynolds had such a verdict been returned by the jury. The record shows that Perkins never requested an explanatory charge, as is the usual practice when it is felt that a misleading charge has been given.

■ Therefore, it is evident under the rules as set forth in *Gorman*, supra, and *Ray*, supra, that charge number 2, in the light of the facts of this case, did not "necessarily mislead" the jury, and in the absence of a request for an explanatory charge, any error committed by the giving of the same is not reversible error.

■ Perkins argues assignments of error three, ten and eleven together in brief. Assignment of error three states:

"The trial court erred in allowing the jury verdict to encompass only one case, being number 18572."

This assignment is without merit. Only rulings of the trial court are subject to assignments of error. Biddy v. Biddy, 284 Ala. 68, 222 So.2d 162, and cases cited therein.

■ Assignment ten states:

"For the verdict of the jury and the judgment thereon is erroneous in that said verdict and judgment applies to only case number 18572."

This assignment is likewise without merit. The jury hearing two causes of action (18572 and 19020) based on the same contract and consolidated for trial by agreement of the parties, rendered a verdict for Reynolds in the amount of $2,396.00. Reynolds filed suit for $7,500.00 on the common count for money had and received. The court in its oral charge clearly explained the two lawsuits before the jury, and further gave the jury three verdict forms; one in favor of Perkins assessing damages against Reynolds, one in favor of Reynolds assessing damages against Per-

kins, and one in favor of Perkins without assessing damages. Assuming that there should have been a separate verdict rendered in both cases 18572 and 19020 (see: Bland v. Empire State Underwriters of Watertown, 202 S.C. 38, 24 S.E.2d 78; Knight v. American Eagle Fire Ins. Co. of New York, 125 Fla. 608, 170 So. 664; Ex parte Ashton, 231 Ala. 497, 165 So. 773], the fact remains that the jury was entitled under the evidence to render the verdict in case number 18572, and the court was authorized thereafter to enter a corresponding judgment thereon, thereby rendering any error harmless. The foregoing is especially true in light of the fact that Perkins at no time before this appeal objected to the jury verdict or the judgment thereon. Furthermore, the Supreme Court of Alabama in Bradley v. Jones, 282 Ala. 331, 211 So.2d 465, wherein the court was considering a suit by a subcontractor to recover for work done under contracts stated:

"In view of the court's instructions [regarding the form of the verdict], the only possible form of verdict the jury could return was one in the form of the instant verdict [a single verdict for blank dollars.]

"Alleged error in the court's oral charge must be specifically pointed out by objections or exceptions to the oral charge so that the trial court may be given an opportunity to correct any errors that may have been committed. [Citations omitted.]

"Because of the express waiver of objections to the charge of the court as to the form of the verdict, we hold that any objections to the form of the verdict on motion for a new trial for the first time, or on appeal here, came too late." See also: McGrew Machine Co. v. One Spring Alarm Clock Co., 124 Neb. 93, 245 N.W. 263.

While in the instant case there was no express waiver of objection to the verdict, the fact remains that Perkins, after agreeing to the consolidation, made no effort whatsoever to help the trial court correct its error.

■ Assignment of error eleven is finally as follows:

"For that the trial court erred in entering a final judgment entry in case number 19020 in that same was not based on a jury verdict."

Similarly, Perkins ought not to be able to object for the first time on appeal. Moreover, it is apparent from the record that any error committed by the court under this assignment is harmless error at most.

The jury was aware of the issues presented by the two cases before it. The court explained in its oral charge that both Reynolds and Perkins had to carry the burden of proof in each of its cases.

Also, in support of this assignment, Perkins argues in brief that the judgment must rest or be predicated upon findings of the jury. While Perkins is correct in this contention, the fact that the jury was aware of the issues presented by the two cases when it rendered the verdict in case number 18572 is overlooked. Furthermore, the judgment rendered in case number 19020 in effect merely adopted the verdict and judgment in case number 18572, and additionally only assessed court costs against Perkins. Therefore, with the issues properly before the jury and the same being decided against Perkins, there results no prejudicial error as Perkins would certainly still be required to pay court costs in case number 19020 if there were a separate verdict therein, and a separate judgment thereon.

Assignments of error seven, eight, nine, twelve and thirteen are argued together and raise the questions of sufficiency of the evidence to support the verdict and the judgment thereon, and the excessiveness thereof.

It is a well settled rule that verdicts are presumed to be correct, and no ground of a motion for a new trial is more carefully scrutinized than that the verdict is contrary to the weight of the evidence; and the refusal to grant a new trial by the trial court, sought on such grounds, serves' to strengthen the presumption in favor of the correctness of the verdict. Vester J. Thompson, Jr., Inc. v. Shelton, 277 Ala. 148, 167 So.2d 715; Callahan v. Booth, 275 Ala. 275, 154 So.2d 32; Smart v. Wambles, 271 Ala. 651, 127 So.2d 611.

The rule is equally well settled that the authority of a trial court to disturb a jury's verdict on the ground of excessive damages should be exercised with great caution. Donald v. Matheny, 276 Ala. 52, 158 So.2d 909, 99 A.L.R.2d 1241 and Southern Ry. Co. v. Stallings, 268 Ala. 463, 107 So.2d 873.

A careful review of the evidence reveals that there was testimony which, if believed by the jury, would justify the verdict. There was evidence indicating that there was only 747,590 bricks and 134,826 blocks laid on both projects. Furthermore, there was evidence of excessive waste of materials on the jobsite, and some testimony indicating loss of bricks due to thievery. In addition, there was evidence in the record by admission of one of the appellants, that Reynolds laid 30,000 bricks and 4,600 blocks, making a total owing to Reynolds of $2,430.00.

The record also shows that Reynolds was not allowed a credit for this work.

Under the above facts and following the presumptions indulged by this court, the motion for a new trial was properly overruled.

There being no reversible error, the case is due to be affirmed.

Affirmed.